## WIGGIN v. SMITH.

In a writ of entry, if the tenant plead *nul disseizin*, he cannot show that he was a mere tenant at will, and that the tenancy had not been terminated, because his plea admits him in possession claiming a freehold, but such plea does not admit the plaintiff's seizin.

Where after a divorce alimony was set out to the wife by metes and bounds, the fee to no land outside the boundaries of the alimony would pass as appurtenant to the alimony.

When an actual seizin is shown in a demandant, proof of a better title in a third person is no defence, unless the tenant procures that title.

And if the tenant should acquire such better title during the pendency of the suit, he could not avail himself of it under the general issue, but must plead it specially in bar of the further maintenance of the suit.

But the tenant may show title in a third person, and thus show that the plaintiff had no seizin of the premises, and thus defeat the plaintiff's action on the ground of the demandant's want of seizin, and that under the general issue.

A verdict which settled some points involved in an issue without error may stand so far as it is correct, and a new trial will be granted on other points necessarily involved in the issue, or on which the former verdict was erroneous, and such judgment will be rendered on both or all the verdicts as justice may require.

WRIT OF ENTRY, dated July 1, 1871, in favor of Charles W. Wiggin and against Harriet S. Smith. Plea, *nul disseizin.*

The plaintiff put in evidence a deed from Daniel Waldron and wife to himself, dated September 27, 1859, of land which, he contended, included the demanded premises, and a plan thereof, which, in connection with the deed, was exhibited and explained by a surveyor, a witness for the plaintiff. The deed is made a part of the case. The defendant moved for a nonsuit, on the ground that the description of the premises in the deed did not include those in dispute. The court overruled the motion, and submitted the question to the jury, and the defendant excepted.

Before the year 1833, one Waldon owned the entire premises included within the lines A, B, C, and D, upon the following chalk:

Lot No. 7 was conveyed to Samuel L. Wiggin, November 4, 1843, and is now held by the defendant in trust for the children of said Samuel. No. 6 was conveyed by Waldron to one Palmer in 1833, who conveyed the same in 1837 to one Stackpole, who in 1839 conveyed it to Samuel L. Wiggin and one Hurd. Hurd conveyed to said Wiggin his undivided half thereof in 1845.

The plaintiff claimed that his deed from Waldron covered the premises included by the lines A, B, M, I, H, D, while the defendant contended that said deed conveyed only the land included within the lines A, B, M, I, K, L, G, D.

The premises in dispute are the piece of land about 19 by 12 feet, directly in rear of lot and store No. 6, and are now covered by a wooden building containing a woodshed and a privy. The evidence was conflicting as to the time when the building was erected, which was, however, between the years 1839 and 1847 inclusive. It was erected by Samuel L. Wiggin. The plaintiff's evidence tended to show that it was erected by permission of Waldron, in consideration that a privy should be included in the building for the accommodation of the tenants of the Waldron property adjoining, and that ever since its erection it had been used by the tenants of the Waldron property, as well as by Samuel

L. Wiggin and his tenants. The defendant testified that while she occupied a tenement over store No. 6, which was during a period of 14 or 15 months, commencing in June, 1839, the shed was kept locked, and that she never knew of the Waldron tenants occupying or using the shed or privy then or since. Upon the question of such occupation and use by the Waldron tenants, the evidence on the part of the defendant was conflicting. The defendant testified that in 1859 she heard a conversation between the plaintiff and said Samuel, in which the plaintiff inquired of Samuel about the premises now in controversy, and Samuel replied,—" I have got [or gained] possession of it some little time." She testified,—" I was astonished when he [Samuel] said he didn't own the land. He said that he put the shed on there without leave, supposing they would notify him to take it off. He didn't say who he expected would notify him to take it off."

On the part of the defendant, there was no other evidence of title, except such as might be derived from the use and occupation of the premises in the manner before stated. The defendant was formerly the wife of said Samuel, but obtained a divorce from him in 1859, and by a decree of court in December of that year, the lot of land No. 6 was assigned to her as alimony by such specific description as excluded the premises in dispute, unless they passed thereby as appurtenant to No. 6. With relation to the defendant's claim to hold the land by adverse possession, the court gave the usual explanation of the essentials of such a title, and, concerning the continuity of possession for the term of twenty years, told the jury that the defendant's former husband's possession could not be regarded as the possession of the defendant, if the decree of alimony did not include the premises in dispute, and that these premises would not pass by force of the term " appurtenances " therein employed.

In accordance with the defendant's request, the court instructed the jury that " if a man without title but claiming title enters upon land the legal title of which is in another, and absolutely ousts him in fact, and holds the possession openly and exclusively for twenty years, the adverse possession is established ; " also, that " the absolute occupation of land under a claim of right for twenty years, by taking the profits thereof to one's own use, the same being open, notorious, and exclusive, is sufficient to enable such occupant to maintain a writ of entry against a person showing a legal title in himself. But the court also instructed the jury that even if the defendant's former husband had acquired a title to the premises by adverse possession prior to the date of the plaintiff's deed, or if his possession had commenced and was continuing so that, if continued long enough, he or his heirs or grantees would have acquired *his* title, which might be coupled with theirs, if necessary, to make twenty years in the aggregate, still it is not the defendant, but her former husband's heirs, who succeed to her husband's rights, since by the divorce she took as alimony a portion of her husband's estate which does not include the premises in dispute. " She has, therefore, no title by adverse possession, and cannot set up

such a claim against the plaintiff. If, then, the plaintiff's deed covers the premises in dispute, he must prevail, and this is the only question for you."

The deposition of Daniel Waldron was offered by the plaintiff. The caption thereof, which is made a part of the case, stated that the taking of the deposition was " begun at nine o'clock," etc., "and continued till the whole was completed." The defendant objected to the deposition, on the ground that it did not appear that the deposition was not completed before the expiration of the hour. The court ruled that the plaintiff might procure an amendment of the caption in this particular, if the facts would warrant it, which was done, and the court thereupon overruled the objection. The defendant also objected that it appears by the caption that " no sufficient oath was taken by the deponent, and that it is otherwise informal and insufficient." The court requested the defendant's counsel to state wherein it appeared by the caption that no sufficient oath was taken, and also, in what respect it was otherwise informal or insufficient, which the counsel declined to do, and thereupon the court overruled the objections and admitted the deposition, and the defendant excepted.

The jury having returned a verdict for the plaintiff, her counsel moved that the same be set aside for error in the rulings aforesaid ; and, also, (1) because of instructions to the jury that the plaintiff was entitled to a verdict if he had the legal title to the land in question simply, whereas the plaintiff's evidence tended to show that the defendant was his tenant at will, and the tenancy was not terminated; (2) because of instructions to the jury to reject all claims of the defendant to the title to the land in question in Samuel L. Wiggin, previous to the defendant's decree of alimony, and previous to the plaintiff's deed, and in herself afterwards by virtue of said decree, and submitting to them the single question only, Did the plaintiff's deed cover the land in dispute ? (3) because, although the defendant in argument claimed and asked the court to instruct the jury that, if Samuel L. Wiggin entered upon the land in dispute and absolutely surrounded it by the four walls of a building, and continued such possession for twenty years with the knowledge of the plaintiff's grantors and previous to the plaintiff's deed, these facts would be strong evidence of Samuel L. Wiggin's entry under a claim hostile to the title of the real owner, and if such an entry was made under such a claim, and possession continued for twenty years, the title by adverse possession was established in him, the court did instruct the jury to ignore all claims to title by adverse possession, and submitted to them the one question only as above; (4) because the court refused to give instructions requested by the defendant, to wit, If Samuel L. Wiggin had obtained in any way title to the land in dispute, and if it was not granted to the defendant by the decree of alimony, the plaintiff could not recover in this suit without first showing that he had obtained Samuel L. Wiggin's title ; (5) because of instructions of the court, that by the decree of alimony the defendant acquired none of Samuel L. Wiggin's accrued or accruing rights in the land in dispute ; that notwithstanding

the defendant's possession and occupation after was the same as Samuel L. Wiggin's before said decree, the defendant could not connect her possession of land in question with Samuel L. Wiggin's possession of the same, because the decree did not grant it in terms, or under the grant of privileges and appurtenances connected therewith.

The questions of law thus raised were reserved.

*T. J. Smith,* for the defendant.

1. The caption of deposition of Daniel Waldron was insufficient—*Powers* v. *Shepard,* 21 N. H. 60—and the defendant, having filed his objections in writing, had done all that could be required of him under this rule.

2. In such actions the plaintiff must show that he has not only the legal interest, but also a possessory title not barred by the statute of limitations—Adams on Ejectments 247 ; 2 Gr. Ev., sec. 553 ; yet here his evidence tended to show that the defendant was in possession as his tenant, and that the tenancy was still subsisting ; if, then, he had the legal title, he did not have the possessory right necessary to maintain his action.

3. By decree of alimony the land in question was conveyed to the defendant—*N. I. Factory* v. *Batchelder,* 3 N. H. 190 ; *Manufacturing Co.* v. *Whittier,* 10 N. H. 305 ; *Winchester* v. *Hees,* 35 N. H. 43—and particularly so when she held No. 7 in trust as well as No. 6 in fee, and, in fact, occupied this tract after, the same as Samuel L. Wiggin, her grantor, did before the decree, to wit, by a building covering the whole of it.

4. The defendant, to disprove the demandant's seizin, may show title in a third person—*Bailey* v. *March,* 2 N. H. 522—and this he may do under the general issue. Now the defendant's evidence tended to show, and as we claim did show, that Samuel L. Wiggin had entered upon this land and built upon it, thus covering its whole extent, and continued to occupy it adversely and continuously from the spring of 1839 up to December, 1859, more than twenty years before the plaintiff's deed ; that he had thus gained title by adverse possession to the land. If he had, then certainly the plaintiff's deed did not cover it, and he had no title to it, for in September, 1859, his grantor had no title to convey ; and still the description of the premises conveyed to the plaintiff would be fully answered, for that description is equally consistent with the claim of boundary as made by either party, and thus the court below erred in particulars, as specified in the second, third, and fourth exceptions.

5. The instructions asked for in the third exception should have been given—*Lund* v. *Parker,* 3 N. H. 49 ; for while it is true that the possession which constitutes a bar to the legal title must commence under a claim hostile to the title of the real owner, an entry upon land and an actual ouster of the real owner, openly and with his knowledge,— or, as in this case, the absolute enclosure of the land by the walls of a

building, the former owner knowing the fact,—would be strong, aye, the strongest evidence that the possession was adverse; and whether it was or was not is a question for the jury.

*Hobbs,* for the plaintiff.

1. The caption of the deposition states that the deponent appeared "before me, Daniel Hall, a justice of the peace and of the quorum throughout the state of New Hampshire." Had it been otherwise, the defendant's refusal to specify the nature of his objection on the request of the court should be regarded as a waiver. If a party objects to evidence, let him state his objection.

II. The defendant entered as the plaintiff's tenant at will, but by claiming the fee disseized the plaintiff, and notice to quit was not requisite. This is elementary. The defendant's plea of *nul disseizin* debars the defendant from giving evidence that she was the plaintiff's tenant, and entitled to notice. The plea admits she is, in claiming a fee. *Williams* v. *Noiseux,* 43 N. H. 388; *Groves* v. *Manufacturing Co.,* 44 N. H. 462.

III. The possession of Sam Wiggin cannot be tacked to the possession of the defendant to make up twenty years' adverse possession, for the defendant does not take by deed, nor as the grantee of Sam; the defendant takes by decree of court, which is to be construed strictly, and not like a deed against the grantor. As the decree does not cover the *locus in quo,* the defendant claims that it passed as appendant or as appurtenant to the land decreed to her. This were well, were it not the law that land cannot be appendant or appurtenant to land—see 2 Wash. on Real Prop. 627. In the case at bar there was no intent for it to pass as parcel thereof. The terms of the decree exclude it.

IV. The only evidence in the case claimed by the defendant as showing adverse possession was what the defendant swore Sam said. Had Sam said he had gained possession, it would have been evidence for the defendant; but the point fatal to the defendant is, that Sam, in giving his account of the manner in which he gained possession, states facts that are in point of law fatal to any claim to adverse possession. First, it appears that he did not enter claiming to own the land; second, that while the building was on the land he did not claim any right to keep it there, but expected the owners to notify him to take it away; third, the evidence on both sides showed that Sam's occupation was not exclusive, the tenants of the Waldron building using the *locus in quo.* Although Sam claimed "that he had gained possession of the land some little time ago," it appears from the facts that Sam simply misapprehended the legal effect of his acts, and misstated it.

Sam did not claim the right to keep the shed on the land, but during the whole time expected to be called upon to take it off, and told his wife that he did not own the land. If this be adverse possession, when, where, or to whom did Sam ever say he owned the land and had

a right to keep the shed on it? It was an acknowledgment by Sam that he did not claim the land as his during the time he owned No. 6. There is no evidence that Sam ever claimed to own the land, but, on the other hand, he himself said he did not own it; and while he said he put the shed on without leave, he did not say that he claimed a right to put and keep it there, but, on the other hand, he expected to be ordered off. This is conclusive against any open, adverse, exclusive possession under a claim of right, and Sam never entered under color of title even. Hence, as by Sam's own statement it appeared that his acts did not in law amount to adverse possession, the instructions of the court were correct. *Lund* v. *Parker*, 3 N. H. 49, is not in point. In that case, the defendant entered under color of title. In the case at bar, *aliter*. In the case at bar, Sam did not claim the land as his during his whole twenty years. No such claim ever came to Waldron's or Porter's knowledge. As Sam entered without color of title, every presumption is against him. *Lund* v. *Parker*, 3 N. H. 52. As it did not appear that he claimed adversely during the twenty years, it is a presumption that he did not, and his own confession corroborates that presumption. *Manufacturing Co.* v. *Whittier*, 10 N. H. 305, is not in point. It did not appear in the case at bar that the *locus* was essential to No. 6, but that it was not essential. In *Manufacturing Co.* v. *Whittier*, too, the question arose under a deed and not under a decree of court. So *N. I. Factory* v. *Batchelder*, 3 N. H. 192, is not in point. That case was as to a right to have water run over land, not land itself. It was a less worthy estate, which may be appendant or appurtenant. It is not this case. So, too, *Winchester* v. *Hees*, 35 N. H. 43, does not hit the point. There the *locus* was essential to the enjoyment of the house: it passed as " parcel," not as appurtenant.

SARGENT, C. J. The exception to the deposition of Daniel Waldron was not well taken. We have examined the deposition and the caption, and find them in proper form. We have no doubt but that the magistrate was properly allowed to amend the caption, and we do not find that it was objectionable as thus amended.

The position, that the defendant may be a tenant at will of the plaintiff, and that this tenancy has not been terminated, and, therefore, that the plaintiff has no right to the possession, and so cannot maintain this action, is not well taken. The defendant has pleaded the general issue, *nul disseizin*, which is held to be an admission that the defendant is in possession, claiming a freehold. If he is not in possession, he must disclaim or plead *non tenure*. If he is in possession, but claims less than a freehold, he should plead *non tenure* special. The defendant cannot therefore be allowed to contradict the direct admissions of her plea by showing that she was tenant at will of the plaintiff. *Cocheco Manufacturing Co.* v. *Whittier*, 10 N. H. 305, 309, and cases; *Melcher* v. *Flanders*, 40 N. H. 139, 155; *Stark* v. *Brown*, 40 N. H. 345; *Williams* v. *Noiseux*, 43 N. H. 388; *Graves* v. *Manufacturing Co.*, 44 N. H. 462.

The second, third, and fifth exceptions are not well taken. We do not think this particular lot of land could be held as appurtenant to lot No. 6, as the defendant claims, as it is not included in the description of the alimony as decreed to her in 1859. If the husband had held adverse possession of this land for ten years, and the same had been set out by metes and bounds to this plaintiff as alimony, then, if she had continued the same possession for ten years more, she might have acquired title to it in that way; but the land not being set off to her, there was nothing to transfer the husband's possession to her, but he might have retained a separate and distinct adverse possession of this lot after the alimony was set out to his wife, and might thus have held the land by adverse possession, not only as against the original owner, but as against this defendant. The fee to no land outside the metes and bounds of the alimony passed by the decree of alimony, and although certain rights and easements in other lands might pass as appurtenant to the land granted or assigned, yet in this case no such rights or easements were owned by her husband at the time of the decree of alimony, and of course could not pass by such decree. But in this case the defendant could not avail herself of any such rights appurtenant, because by her plea, as we have seen, she admits herself in possession, claiming a freehold in the land, and not merely claiming rights or easements as appurtenant to some other lands.

If the husband had possession of this lot here in dispute previous to and at the time of the decree of alimony, still this defendant does not in any way connect her possession with his, and that simply because this lot was not included in the alimony. If it had been, there would have been no doubt that the decree of alimony would have operated like any other legal conveyance of the land from her husband to herself, which would convey the possession if that was all the title which the husband had, and so give her the benefit of it. *Wells* v. *Iron Co.*, 48 N. H. 491, 530. Outside of her alimony she takes nothing from her husband's estate. She is not an heir, but a mere stranger, so far as his other lands are concerned in which she took no alimony.

But the fourth exception is, we think, well taken. It is well settled that the tenant may show title in a third person, in order to defeat the plaintiff's action by showing that the demandant had no seizin of the premises, and of course no right to recover in this action. *Bailey* v. *March*, 2 N. H. 522, as modified by the opinion in the same case, 3 N. H. 274. It is well settled, also, that when an actual seizin is shown in the demandant, then the proof of a better title in a third person is no defence unless the tenant has that title. If he acquire such title during the pendency of the suit, that cannot avail him under the general issue, but the tenant may plead such newly acquired title in bar to the further maintenance of the suit. It cannot avail the tenant to prove a better title in a third person than either the demandant or himself can show. If the demandant has proved actual seizin of the premises, that will enable him to maintain this writ against the tenant who has no title.

But when the tenant can in any way disprove the plaintiff's seizin,

that goes to the very gist of the action; for although the general issue admits the tenant's possession of the premises claiming a freehold, yet it does not admit the plaintiff's seizin, and that being the gist of his action may be disproved under the general issue. *Berry* v. *Brown*, 5 N. H. 156; *Bean* v. *Moulton*, 5 N. H. 450; *Enfield* v. *Permit*, 8 N. H. 512; *King* v. *Barns*, 13 Pick. 24; *Smith* v. *Edminster*, 13 N. H. 410; *Cheswell* v. *Eastman*, 16 N. H. 296; *Bell* v. *Ham*, 16 N. H. 302; *Spence* v. *Smith*, 18 N. H. 587; *Hutchins* v. *Carleton*, 19 N. H. 487, 511, 512, where the rule is stated to be, as established in this state and elsewhere, that where a party has shown a seizin in himself, his adversary cannot avoid the effect of it by showing a title in a third person; and the same rule applies when a person actually seized gives a deed to the demandant.

But when the evidence tends to show that the plaintiff was never actually seized, then the evidence of title in a third person may become material. *Bergin* v. *McFarland*, 26 N. H. 533; Jackson on Real Actions 4, 5, 157, 173. On page 4, Jackson says,—"In this writ of entry on disseizin, the only title which the demandant sets forth is the actual seizin in himself, or of some ancestor or predecessor under whom he claims. This title is founded upon the simple principle that a person in possession of land may lawfully retain it against all others who cannot show a better right to it. When, therefore, the demandant has shown the seizin in himself or his ancestor, he has the right to call on the adverse party to show how he was authorized to oust the former possessor, and by what title he now claims the land;" and on page 5, "that neither party shall show a title in a third person, unless he claims under it; or, in other words, that each party must rely on the strength of his own title, and shall not prevail merely by showing that a stranger has a better right than that of his adversary. This latter rule, however, does not prevent the tenant in a writ of entry from disproving the seizin alleged in the writ by proving that a stranger was seized during the period in question; neither does it prevent him from pleading in the writ of entry *cum titulo*, that some other person is the heir of the supposed disseizee, and that so the demandant has no right to maintain the action as heir. Thus he is not merely proving that a third person has a better title than the demandant, but he is directly disproving the title on which the demandant relies to maintain his action."

So, on page 157, he says,—"On the trial of this issue, it is first necessary for the demandant to prove the seizin in which his action is founded. * * This seizin on the part of the demandant must be proved to have been within the time prescribed by the statutes of limitations, as the tenant is not required to plead the statute specially."

Again: "The evidence of seizin on the part of the demandant may be rebutted by the tenant, without his undertaking to show any title or right of entry on his own part;" so that, while the tenant cannot avail himself of the title of a stranger unless he holds under it, yet he may disprove the facts which the demandant has attempted to prove, by

proving that he was not seized, as alleged in his writ; and this evidence comes literally within the terms of the general issue, for if the demandant was not seized, he has not been disseized as alleged in his writ.

In the case before us, one branch of the tenant's case was to show that the plaintiff had not had actual seizin of the premises since he had his deed in 1859,—alleging that she had been in possession all that time, and also alleging that his (plaintiff's) grantor had not had seizin within twenty years and more before that time, thus showing that the demandant's seizin was not within the time prescribed by the statute of limitations; that, before the plaintiff's title or the defendant's title, under her decree of alimony commenced, the plaintiff had, by the adverse possession of Samuel L. Wiggin, lost not only his actual seizin, but all right to be seized ; that this right of possession, and all title to the land, had passed from the plaintiff's grantor before he gave the plaintiff his deed ; so that neither the plaintiff had ever been seized of the demanded premises himself, nor had his grantor the actual seizin, or the right of seizin, or any right or title to the land at the time the plaintiff took his deed.

That would be disproving the plaintiff's seizin most effectually, because if Samuel L. Wiggin had held this land adversely and uninterruptedly for twenty years before the plaintiff took his deed in 1859, he gained a title by prescription, which would be the same as an absolute conveyance from the former owner to said Wiggin at the commencement of the twenty years, or prior to its commencement; and it could hardly be claimed that a man who had never had seizin himself personally, and whose grantor had parted with all right and title to the land, and also with its actual possession, more than twenty years before he gave the deed to the claimant, could maintain a writ of entry upon his own seizin.

If Samuel L. Wiggin held the premises adversely and continuously, according to the instructions given by the court to the jury, for twenty years before Waldron conveyed to this plaintiff, and had thus acquired a title by actual seizin and adverse possession for twenty years, and the defendant or any one else was at the time of the deed, and has been since, in possession of the premises, the plaintiff fails to make out his seizin on which he declares, and must lose his case ; and this is what the defendant's evidence tended to prove, and we think it should have been submitted to the jury. From an examination of the minutes of the judge who tried this cause, I find that the evidence on this point is not all stated in the case, and I am satisfied that there was evidence from which the jury might have found that Samuel L. Wiggin had acquired a right to this land by adverse possession before 1859, when Waldron conveyed to this plaintiff.

The plaintiff, in his brief, takes the position that from all the evidence stated in the case it appears affirmatively that Samuel L. Wiggin did not claim adversely, but that he admitted Waldron's right and title to the land. If such had been the character of all the evidence before

the court, there would not have been any occasion for the full and explicit instructions given to the jury in the case upon the point of adverse possession; for it will be seen that, according to the rulings of the court, these instructions could not have applied to any other part of the case or to any other evidence than this. And taking the evidence just as it is reported in the case, concerning the adverse possession of Samuel L. Wiggin, and we think it was competent as tending to show that he had gained a title by prescription before Waldron's deed to the plaintiff.

The defendant states that she occupied the premises in question for fourteen or fifteen months from June, 1839, and that the building on those premises was kept locked against Waldron and his tenants all this time, and that she never knew of the Waldron tenants occupying this shed or privy then or at any time since. Her occupation in 1839 would be that of her husband, of course. She then relates the conversation she heard between the plaintiff and said Samuel L. Wiggin in 1859, in which the latter claimed that he had gained the right of possession of these premises for some little time. After this she was astonished to hear said Samuel say that he did not own the land, etc. Why was she astonished at this? Evidently because it was in direct opposition to and contradiction of all that she had ever heard him say before. Is there any explanation to be given of this sudden change in his conduct in 1859? We must remember that this defendant obtained her divorce from said Samuel L. Wiggin that year, and in December, 1859, obtained a decree by which said Lot 6 was set off to her as alimony. This may account for a change of feeling on his part towards his late wife. And if she then claimed, as she now does, to hold this piece in question as a part of or as appurtenant to her alimony, he may have preferred that she should not hold it, and may have made this sudden change in his claims and position with that view. In that view it would be immaterial whether she could legally hold it or not. If she claimed to do so, and he preferred that she should not, it may account for this change in his conduct, and show a reason why he now might disclaim what he had claimed before. The jury might have found that his former claims were just and well founded, and that he had in fact acquired a title to this land in question before December, 1859; and they might find that he always so claimed until the quarrel with his wife, and that all that he said afterwards about his not owning it was to be attributed to that quarrel and his change of feeling towards his wife, and that the same was not true in fact. A jury might have found that the late wife had abundant reason to be surprised at these remarks, for the reason that they were untrue.

If Samuel L. Wiggin gained title to those premises by adverse possession before 1859 as against Waldron, then Waldron conveyed nothing by his deed to the plaintiff; and if the plaintiff has not since had actual seizin and possession of the land, then he cannot maintain this suit, and this may all be properly shown under the general issue. We think there was competent evidence to be submitted to the jury on the

point of the adverse possession of S. L. Wiggin for twenty years before 1859, and for that reason there may be a new trial of that question. The verdict is right in other respects, and therefore need not be set aside; but a new trial will be granted on this one point, whether, between 1839 and 1859, Samuel L. Wiggin acquired the right to the premises in question by prescription. If the defendant so elect, she can have a new trial on that point, otherwise,

*Judgment on the verdict.*

At the trial term the defendant did not elect a new trial, but judgment was rendered on the verdict for the plaintiff.